1   DAVID MANNING CHODOS, State Bar # 39555
    CHODOS & ASSOCIATES
2   1880 Century Park East, Suite 1450
    Los Angeles, California, 90067
3   (310) 203-3888 - Telephone
    (310) 203-3866 - Facsimile
4
    JACK G. CAIRL, Bar #105335
5   ISAACMAN, KAUFMAN & PAINTER
    10250 Constellation Boulevard, Suite 2900
6   Los Angeles, CA 90067
    (310) 881-6800 - Telephone
7   (310) 881-6801 - Facsimile

8   Attorneys for Defendant INTERNATIONAL
    MEDIA FILMS, INC.
9

10                  UNITED STATES DISTRICT COURT
11
12          FOR THE CENTRAL DISTRICT OF CALIFORNIA
13

14  PARAMOUNT PICTURES                  CASE NO.:
15  CORPORATION, a Delaware             CV 11-09112-SJO (AJWx)
    corporation; and MELANGE PICTURES
16  LLC, a Delaware corporation,        MEMORANDUM OF POINTS
                                        AND AUTHORITIES IN
17              Plaintiffs,             SUPPORT OF DEFENDANT'S
                                        OPPOSITION TO PLAINTIFFS'
18        v.                            MOTION FOR PARTIAL
                                        JUDGMENT ON THE
19  INTERNATIONAL MEDIA FILMS,          PLEADINGS
20  INC., a Nevada corporation,
                                        (Request for Judicial Notice and
21              Defendant               Declaration of David M. Chodos
                                        Filed Concurrently Herewith)
22
23                                      DATE: April 16, 2012
                                        TIME: 10:00 a.m.
24                                      COURTROOM: 1
                                        JUDGE: Honorable S. James Otero
25
26
27
28

─────────────────────────────────────────────────────────
        DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION
             FOR PARTIAL JUDGMENT ON THE PLEADINGS

## **TABLE OF CONTENTS**

I.      **INTRODUCTION**...................................................................3

        A.      Limitations On The Offensive Use Of Collateral Estoppel............3

        B.      The SDNY Court Made No Ruling As To Who Had Title To The

        Film, Nor Did It Rule That IMF Did Not.........................................4

II.     **SDNY ACTION**...................................................................5

III.    **THE RULES GOVERNING THE OFFENSIVE USE OF
COLLATERAL ESTOPPEL PRECLUDE THE VIACOM COMPANIES
FROM RELYING UPON IT IN THIS ACTION**...............................7

        A.      Collateral Estoppel Does Not Apply Because The Viacom

        Companies Had The Ability And A Clear Opportunity To Join In The

        SDNY Action......................................................................10

        B.      The Court Has Broad Discretion In Determining Not to Apply Issue

        Preclusion Against IMF. Its Application Should Not Be Automatic,

        Especially Where the Result Would Be Unfair..............................11

                1.      The Court Should Use Its Discretion Not to Apply Issue

                Preclusion.................................................................11

                2.      Paramount Has Not Shown And Cannot Show With Certainty

                That The SDNY Order Necessarily Decided IMF's Rights To The

                Film........................................................................13

                3.      Because Of The Substantial Difference In Gravity Of An

                Adverse Judgment In The SDNY Action As Opposed To This Action

                And The Italian Action, The Court Should Decline To Apply

                Collateral Estoppel......................................................16

IV.     **CONCLUSION**.................................................................17

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION
FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF AUTHORITIES

**Cases**

American Plastic Equipment Inc. v. Toytrackerz, LLC, Civil Action No. 07-2253-DJW, 2009 WL 902422, (D. Kan., Mar. 31, 2009)............................................... 15

Buckingham v. Federal Land Bank Ass'n, 398 N.W.2d 873 (Iowa 1987) ............ 12

Chicago Truck Drivers, Helpers and Warehouse Union Pension Fund v. Century Motor Freight, Inc., 125 F.3d 526 (7th Cir. 1997) ............................................... 15

Dana v. E.S. Originals, Inc., 342 F.3d 1320 (Fed. Cir. 2003) ..................... 4, 10, 12

Elan Microelectronics Corp. v. Apple, Inc., C 09-01531 RS, 2010 WL 4510909, 2010 U.S. Dist. LEXIS 122011 (N.D. Cal. Nov. 1, 2010)................................. 13

Hydranautics v. FilmTec Corp., 204 F.3d 880 (9th. Cir. 2000) ............................ 13

In re Palmer, 207 F.3d 566 (9th Cir. 2000)........................................................... 11

Itar-Tass Russian News Agency v. Russian Kurier, Inc., 153 F.3d 82 (2d. Cir. 1998) .................................................................................................................. 16

Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez), 378 Fed. Appx. 610 (9th Cir. 2010) ................................................................................................... 12

Lucido v. Superior Court, 51 Cal. 3d 335 (Cal. 1990) .......................................... 11

Media Techs Licensing, LLC v. Upper Deck Co., 334 F.3d 1366 (Fed. Cir. 2003). ............................................................................................................................ 12

Offshore Sportswear, Inc. v. Vuarnet Int'l, B.V., 114 F.3d 848 (9th Cir 1997) ... 13

Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979) ..................................... passim

People v. Seltzer, 25 Cal. App. 3d. Supp. 52 (Cal. App. Dep't Super. Ct. 1972).. 11

U.S. v. Geophysical Corp. of Alaska, 732 F.2d 693, (9th Cir. 1984)................... 12

**Treatises**

The Restatement (Second) of Judgments § 88 (3) (Tent. Draft No. 2, Apr. 15, 1975) ................................................................................................................... 9

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS**

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

Plaintiffs Paramount Pictures Corporation ("Paramount") and Melange Pictures, LLC ("Melange") are sister companies in that they are both subsidiaries of Viacom Inc. (See Defendant's Request for Judicial Notice and D. Chodos Declaration, filed concurrently with this memorandum). They are therefore collectively referred to herein as the "Viacom Companies" or "Plaintiffs".

**A.    Limitations On The Offensive Use Of Collateral Estoppel.**

The instant Motion for Partial Judgment on the Pleadings (the "Motion") is grounded upon the contention that the Viacom Companies are entitled to utilize the doctrine of collateral estoppel (*sometimes known as issue preclusion*) offensively to defeat International Media Films, Inc.'s ("IMF") copyright claim in the Federico Fellini motion picture La Dolce Vita ("Film"). As we demonstrate below, however, (1) the use of offensive collateral estoppel is not a matter of right, and the (2) Viacom Companies are ineligible to utilize the doctrine, having failed to join in the prior action when they had an opportunity to do so.

The action upon which the Viacom Companies depend in asserting collateral estoppels is <u>International Media Films, Inc v. Lucas Entertainment, Inc., *et al.*</u>, United States District Court for the Southern District of New York Case No. 07 Civ. 1178 (JGK) filed February 15, 2007). We refer to that action as the "SDNY Action" as do the Plaintiffs.

There is no question about the fact that the Viacom Companies were aware of the SDNY Action; Paramount actively participated in it, supplying a declaration by Marguerite A. Pacacha, Paramount's "Senior Vice President, Business Affairs and Legal" to establish an alternative claimed chain of title.

Despite Viacom's awareness of the Lucas case and Paramount's participation in it, the Viacom Companies still chose not to join as parties to it.

The reason is obvious – if they intervened in the SDNY Action and IMF prevailed, they would have been bound by that ruling and would have lost the opportunity to challenge IMF in their own action, as they are doing now. Instead the Viacom Companies waited to see how the SDNY Action was decided, and whether Lucas would receive a favorable ruling in the SDNY Action that they could use in a later action against IMF.

That decision, however, has consequences: having knowingly chosen not to avail themselves of the opportunity to join in SDNY Action, they may not utilize collateral estoppel offensively in this action. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331 (1979) and Dana v. E.S. Originals, Inc., 342 F.3d 1320, 1327 (Fed. Cir. 2003). (We discuss this rule and the public policies that support it in Section III below.)

**B.     The SDNY Court Made No Ruling As To Who Had Title To The Film, Nor Did It Rule That IMF Did Not.**

There is another reason why the Viacom Companies are not entitled to utilize offensive collateral estoppel in this action. The court in the SDNY Action never made the finding the Viacom Companies needed in to prevail on their declaratory relief claim in this action. In assessing whether to apply collateral estoppel to the present action, the Court must look to see if the issue was actually resolved in the prior action. In our case it was not. The underlying ruling of the SDNY court did not resolve the issue of copyright ownership for any of the parties involved.

The SDNY court only found that the issue could not be determined because IMF made an insufficient showing of their chain of tile to give them standing to being the infringement claim in that action. Lucas, the defendant in the SDNY Action filed a cross action seeking to invalidate IMF's copyright in the Film, but

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS**

Lucas dismissed that claim without prejudice, therefore the issue of ownership in the Film was <u>never</u> resolved and is still in question today. (Order, p. 25).

For all of the reasons provided herein, IMF respectfully requests that the instant Motion be denied.

## II.   **THE SDNY ACTION**

In the SDNY Action, IMF brought a copyright infringement claim against defendant Lucas Entertainment, Inc. ("Lucas"), which had distributed a sexually explicit version of the Film. Lucas brought a motion for summary judgment challenging IMF's standing as owner of the copyright, requiring IMF to produce evidence that it held the copyright to the Film essential to its standing to bring the infringement claim. Significantly, Lucas's motion was supported by the declaration of Paramount Pictures' legal counsel who provided documentation supporting Paramount's purported co-ownership of the Film. Lucas retained two European legal experts who came up with arcane theories questioning the authenticity of IMF's chain of title documents.

In opposing the motion, IMF proffered substantial documentation and declarations showing the chain of title under which IMF acquired rights to the Film. (*See* SDNY 3/31/10 Memorandum and Order attached as Exhibit 4 to Paramount's Request for Judicial Notice [the "Order"]) This evidence included copies of written agreements and declarations showing the succession of rights transfers from 1962 through 2001 as follows:

1.  (1962) The original holder of the rights, Riama Film S.P.A. ("Riama"), transferred the rights (with minor exclusions) to Cinemat, S. A. ("Cinemat"); (Order, p. 34)

2.   (1980) Cinemat transferred its rights to the Liechtenstein company Hor A.G. in a written agreement (the "Cinemat-Hor agreement"). IMF submitted a photocopy of the agreement, the original of which is on file

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS**

with the Public Register of Lichtenstein, and 1980 declaration of Bruno A. Hugi, the administrator of Cinemat, declaring that Cinemat transferred all rights Film to Hor; (Id., pp. 34-35)

3. (1981) Hor transferred its rights to Oriental Films S.r.1 ("Oriental Films") in a written agreement proffered by IMF dated November 20, 1981; (Id., p. 36)

4. (1997) Oriental Films transferred its rights in Film to Cinestampa in a written agreement proffered by IMF dated (Id., p. 37); and

5. Cinestampa transferred its rights to IMF on September 20, 2001.

Although IMF introduced evidence of the authenticity of the documents, IMF was not able to produce the originals of two thirty-year-old agreements because the originals were in Europe. (Id., pp. 7-8)[1] Lucas questioned the authenticity of some of this documentation through a declaration of a Mr. Bernd Hammermann (Head of the Public Register Office in Liechtenstein) and Italian lawyer Luciano Deffarra questioning the authenticity of the Cinemat-Hor agreement. (Id., pp. 7-8).

Because IMF had the burden of proof in the SDNY Action (a burden that the Viacom Companies now bear in the instant action), the SDNY court ruled that, under Rule of Evidence §1003, because the authenticity of the originals had been challenged, the absence of the original documentation precluded the court from considering IMF's evidence of the Cinemat-Hor agreement. (Id., pp. 45-47) Thus, the SDNY court granted Lucas' motion for summary judgment and found only

---

[1] Interestingly, although Mr. Hammermann was head of the Liechtenstein Public Registry, his declaration pointedly failed to mention whether the questioned document was on file in the Registry. The SDNY court noted his omission, but given the nature of the Order, it was not necessary to consider such evidence since the court was not ruling on the authenticity of the Cinemat-Hor agreement. (Order, pp. 35-36)

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS**

that IMF had not proffered "sufficient admissible evidence from which a reasonable fact finder could conclude that it was the copyright owner of the Fellini film." (Id., p. 50).

It is important to note that what the New York Court's Order does <u>not</u> say. Nowhere in its opinion does it conclude that IMF's title to the Film is invalid, or that IMF's supporting documents are not authentic, or that IMF does not own rights to the Film. Rather, the SDNY court's ruling was based upon a narrow application of Rule of Evidence § 1003 to a plaintiff who lacks original documentation and yet has the burden of proof in opposing summary judgment.

The Viacom Companies are incorrectly presenting this Order as an affirmative statement that IMF does not own any copyrights in the Film. In order to make this argument, the Viacom Companies must show this Court that the SDNY ruling specifically concluded the issue of copyright ownership – however it clearly did not. The SDNY court expressly declined to rule on the issue of ownership, and in fact stated that it is quite possible that the Film is in the "public domain". (Order p.21 ¶ 1).   The SDNY court merely found that IMF's chain of title evidence was insufficient (based on evidentiary rules governing the admissibility of copies where the validity of the original is challenged) to proceed with its infringement action. This ruling is quite different than what the Viacom Companies present here and would like this Court to believe.

## III.   THE RULES GOVERNING THE OFFENSIVE USE OF COLLATERAL ESTOPPEL PRECLUDE THE VIACOM COMPANIES FROM RELYING UPON IT IN THIS ACTION

As Plaintiffs in the instant action, the Viacom Companies argue that this Court is required to apply the doctrine of collateral estoppel (or issue preclusion) in their favor. What the Viacom Companies apparently overlook is that they are not asserting the doctrine defensively as they would if IMF had sued one of the

DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION
FOR JUDGMENT ON THE PLEADINGS

Viacom Companies, but rather are urging the Court to use the doctrine offensively against IMF as a defendant. Thus, Plaintiffs ignore three prevailing principles which govern the offensive application of collateral estoppel in this matter. Those principles, all of which we discuss in detail below, are as follows:

(1)    Collateral estoppels is available only when the moving party can establish with clarity and certainty that the issue decided in the previous proceeding was identical to the one sought to be re-litigated. (See discussion on page 13 below)

(2)    The court is not required to apply the doctrine of offensive collateral estoppel in any event, and merely has the discretion to do so. The court is entitled to require that the parties utilize the doctrine, if at all, only after the Defendant has had the opportunity to conduct discovery in support of its position.  (See discussion on pages 11 and 12 below)

(2)    More important, offensive collateral estoppel (the use of the doctrine by a Plaintiff to defeat a Defendant's right to litigate an issue) should not be allowed where either: (a) a plaintiff could have, but did not join an earlier action; **or** (b) its application would be unfair to the defendant. Parklane Hosiery Co. v. Shore, supra, 439 U.S. at 331.

The foregoing rules are rooted in the public policy considerations underlying the application of the doctrine of collateral estoppel. The rationale supporting the doctrine of collateral estoppel is that it prevents abuse of judicial resources by promoting a multiplicity of actions. Collateral estoppel is therefore available when it promotes that policy, and unavailable where it defeats it. The Supreme Court, in Parklane warned that while conservation of judicial resources is achieved through "defensive" application of the doctrine, the same is not true with regard to its "offensive" use (use by a Plaintiff in an attempt to deny a defendant the right litigate the issue) and therefore the courts should be wary of

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS**

the unintended negative effects of offensive collateral estoppel. As the Supreme Court noted:

> "[O]ffensive use of collateral estoppel does not promote judicial economy in the same manner that defensive use does. Defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely "switching adversaries", Parklane Hosiery Co. v. Shore, supra, 439 U.S. 329, it gives a plaintiff a strong incentive to join all potential defendants in the first action where it is possible. **Offensive use of collateral estoppel, on the other hand, creates precisely the opposite incentive** (*emphasis added*). Since a non-party plaintiff will be able to rely on a previous judgment against a defendant, but is not bound by that judgment should the defendant win, the non-party plaintiff has every incentive to adopt a "wait and see" attitude, in the hope that the first action by another party will result in a favorable judgment for the non-party plaintiff. Thus, offensive use of collateral estoppel will likely increase rather than decrease the total amount of litigation, because potential plaintiffs will have everything to gain and nothing to lose by not intervening in the first action. Parklane Hosiery Co. v. Shore, supra, 439 U.S. at 330.

The Supreme Court in Parklane went on to conclude that: The general rule should be that in cases **where a plaintiff could easily have joined in the earlier action** or where, either for the reasons discussed above or for other reasons, the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel. Id., 439 U.S. at 331 (*emphasis added*).

This rule is well established. The 1975 tentative draft of the Restatement

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION
FOR JUDGMENT ON THE PLEADINGS**

Second of Judgments articulated it four years before the Supreme Court adopted it in <u>Parklane</u> **(The application of collateral estoppel may be denied if the party asserting it "could have effected joinder in the first action between himself and his present adversary.")** The Restatement (Second) of Judgments § 88 (3) (Tent. Draft No. 2, Apr. 15, 1975).

In short, interested parties, like the Viacom Companies here, who are aware of the existence of the prior action and choose not to join in it in order to avoid the risk of having an adverse ruling binding upon them, may not wait until the conclusion of that action and then use the judgment only if it is favorable to them.

**A.    Collateral Estoppel Does Not Apply Because The Viacom Companies Had The Ability And A Clear Opportunity To Join In The SDNY Action.**

It cannot be denied that the Viacom Companies had the legal right to join in the SDNY Action and declined to do so. The Copyright Act actually specifically permits such a joinder in intervention in such cases. 17 USC §501(b) provides that "[t]he court may require the joinder, and **shall permit the intervention**, of any person having or claiming an interest in the copyright." (*emphasis added*). Further, in view of their competing copyright claim, there cannot be any question about the fact that Viacom and its subsidiary companies had the opportunity and the motive to defeat IMF in the SDNY Action.

Viacom and it subsidiaries not only had actual knowledge of the SDNY Action, but Paramount actively participated in the case by submitting a declaration from Marguerite Pacacha, Paramount's Vice President of Business and Legal Affairs to assist with Lucas' defense. (see, Request for Judicial Notice, Exhibit A, Decl. M. Pacacha) The declaration provided documents to support an alternate chain of title theory, which served as the basis for attacking IMF's copyright claim. Paramount was clearly interested in the outcome of the action, but because

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS**

Paramount was not a party to the case, it avoided the risk of adverse judgment against itself. The Viacom Companies' "wait and see" tactics in the SDNY Action prohibits them asserting offensive collateral estoppel in this case. <u>Parklane Hosiery Co. v. Shore</u>, supra, 439 U.S. 322; <u>Dana v. E.S. Originals, Inc.</u>, supra, 342 F.3d at 1327. (Court of appeals <u>vacated</u> the trial court's decision to apply collateral estoppel offensively, although all the legal prerequisites were met, solely because the court did not determine whether the defendant could have easily joined the prior action).

The Viacom Companies clearly took advantage of the fact that if Lucas lost its motion, the Viacom Companies' status, as non-parties would shield them from any res judicata or collateral estoppel effect. Without a doubt, if IMF had prevailed in the SDNY Action, IMF still would have been precluded from asserting collateral estoppel against the Viacom Companies, because they were not parties to the action. The Viacom Companies now seek, however, to engage in precisely the behavior that <u>Parklane</u> warns against — after remaining in the background of the SDNY Action, they have come to California to seek a quick ruling against IMF before any discovery is undertaken. Equity prohibits such a result.

**B.     The Court Has Broad Discretion In Determining Not to Apply Issue Preclusion Against IMF. Its Application Should Not Be Automatic, Especially Where the Result Would Be Unfair.**

**1.     The Court Should Use Its Discretion Not to Apply Issue Preclusion.**

California courts do not apply issue preclusion automatically or rigidly; rather, they are permitted to decline to give issue preclusive effect to prior judgments in deference to countervailing considerations of whether the application of collateral estoppel is fair. See, <u>Lucido v. Superior Court</u>, 51 Cal. 3d

-11-

335,342-343 (Cal. 1990); see also <u>People v. Seltzer</u>, 25 Cal. App. 3d Supp. 52, 54-55 (Cal. App. Dep't Super. Ct. 1972) (collecting cases). Opening with <u>In re Palmer,</u> 207 F.3d. 566, 568 (9th Cir. 2000) the Viacom Companies begin by attempting to turn the <u>Palmer</u>) court's statement that collateral estoppel "is appropriate" when certain factors are met into a rule precluding the court from using its discretion. The truth is, the courts have broad discretion and must be very cautious and restrictive when determining whether to apply the doctrine offensively. <u>Parklane Hosiery Co. v. Shore,</u> <u>supra</u>, 439 U.S. 321, 331, 326, n.4; <u>Lopez v. Emergency Serv. Restoration, Inc.</u> (In re Lopez), 378 Fed. Appx. 610, 613 (9th Cir. 2010); <u>Buckingham v. Federal Land Bank Ass'n</u>, 398 N.W.2d 873, 876. (Iowa 1987); <u>U.S. v. Geophysical Corp. of Alaska,</u> 732 F.2d 693, (9th Cir. 1984) (Once it is determined that the collateral estoppel bar is available, actual decision to apply the doctrine itself is left to the discretion of the district court).

The Ninth Circuit normally applies claim preclusion where (1) the prior litigation was terminated by a final judgment on the merits; (2) the prior litigation involved the same claim or cause of action as the later suit; and (3) the same parties, or their privies, were involved in the prior litigation. <u>Media Techs Licensing, LLC v. Upper Deck Co.,</u> 334 F.3d 1366, 1369 (Fed. Cir. 2003).

This third factor, that the same parties were involved in the prior litigation, goes to issues of fairness and judicial economy, and is the reason that courts frown upon allowing a non-party to a prior action to use the result of a prior action against a defendant in a current action. The court still <u>must</u> carefully consider the equitable factors weighing against the offensive use of collateral estoppel. <u>Dana v. E.S. Originals, Inc.,</u> <u>supra</u>, 342 F.3d 1320, 1325.

The Viacom Companies cannot assert collateral estoppel because (1) they have failed to show that the SDNY Order made any determination in connection with IMF's copyright ownership in the Film, thus they also failed to show that

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS**

collateral estoppel applies to this action; and (2) there is a substantial difference in the effect of the SDNY Action and this action on IMF's rights in connection with ownership of the Film. For these reasons, the application of collateral estoppel to IMF would be substantially unfair and therefore this Court should, in its discretion deny the Plaintiffs Motion.

### 2. Paramount Has Not Shown And Cannot Show With Certainty That The SDNY Order Necessarily Decided IMF's Rights To The Film.

Viacom Companies ask this Court to apply offensive collateral estoppel and rule as a matter of law that IMF has no rights to the Film. In <u>Hydranautics v. FilmTec Corp.</u>, 204 F.3d 880 (9th. Cir. 2000), the Ninth Circuit <u>reversed</u> the district court and ruled that collateral estoppel only applies when the moving party shows *"with clarity and certainty"* that the ruling sought was *"necessarily* decided at the previous proceeding" and "is *identical* to the one which is sought to be relitigated." (204 F.3d at 885-86, citing <u>Offshore Sportswear, Inc. v. Vuarnet Int'l, B.V.</u>, 114 F.3d 848, 850 (9th Cir 1997) (*emphasis added*); also, <u>Elan Microelectronics Corp. v. Apple, Inc.</u>, C 09-01531 RS, 2010 WL 4510909, 2010 U.S. Dist. LEXIS 122011 (N.D. Cal. Nov. 1, 2010) (Issue preclusion denied where defendant Apple could not show that the prior court specifically addressed the ruling Apple sought to impose through collateral estoppel, or that the prior ruling necessarily included the finding sought by Apple.)

Paramount has clearly failed to carry its burden. Paramount merely asserts that the SDNY court carefully looked at the evidence and concluded that IMF had failed to make a *prima facie* showing of copyright ownership. However, Paramount fails to show, let alone show with either clarity or certainty, that the SDNY actually decided the validity of IMF's chain of title to the rights in the Film, or that such a ruling was necessary to the Order. For example, a ruling that

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS**

1    IMF possessed no rights to the Film would have required the SDNY court to rule
2    IMF's chain of title documents were forgeries. The SDNY court, however,
3    specifically <u>declined</u> to make such a ruling, and merely noted that "questions have
4    been raised about the authenticity of the certified copy" of the Cinemat-Hor
5    agreement. (Order, p. 47).

6         Moreover, in a later phase of the SDNY Action, the court specifically stated
7    that "[t]he plaintiff argues that it was clear that good title rested with Paramount,
8    but this Court never resolved that Paramount did have good title, and indeed
9    Paramount had not sued the plaintiff for copyright infringement while the
10   litigation was pending. While this Court eventually determined on summary
11   judgment that there was insufficient admissible evidence to establish the plaintiff's
12   copyright to La Dolce Vita, that is not the equivalent of a finding that the case was
13   pursued in bad faith or with no colorable basis." <u>International Media Films, Inc. v.</u>
14   <u>Lucas Entertainment Inc.</u>, 2011 U.S. Dist. Lexis 134627. Applying collateral
15   estoppel to preclude IMF from litigating this action, when the court stated that the
16   ruling was based on different grounds entirely would be substantially unfair to
17   IMF.

18        Indeed, it was only necessary for the SDNY Court to determine the
19   <u>admissibility</u> of the Cinemat-Hor agreement in the context of a summary
20   judgment motion, not whether the agreement was entered into, or the terms of the
21   agreement. Thus, the Order is devoid of any statement:

22             i.   That IMF's chain of title to the Film's U.S. rights was in any
23                  way invalid or not genuine; or
24             ii.  That IMF did not lawfully own the U.S. rights to the Film; or
25             iii. That Paramount held <u>any</u> rights whatsoever in the Film.
26        In fact, triable issues existed regarding the genuineness of the agreement
27   and if a summary judgment motion on the specific ground that IMF did not own
28

-14-

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION
FOR JUDGMENT ON THE PLEADINGS**

rights to the Film had been brought in the SDNY Action, IMF would have prevailed because the burden of proof would have been on the moving party, and IMF's chain of title evidence would have *defeated* summary judgment. (See id.) Certainly, IMF would have been able to let a jury decided the issue of the authenticity of its chain of title documentation.

Moreover, the determination whether IMF, or Paramount, or anyone at all holds the U.S. rights to the Film involves a factual and legal analysis that is not suitable for ruling without full discovery into the underlying basis of each parties' claims to the Film.[2] In effect, Paramount's motion for judgment on the pleadings is a disguised motion for summary judgment seeking summary rulings on disputed actual matters before any discovery can take place.

The only possible collateral estoppel effect of the Order is that IMF cannot bring a copyright infringement claim against Lucas. In fact, in supporting its ruling, the SDNY court merely cited the District of Kansas case <u>American Plastic Equipment Inc. v. Toytrackerz, LLC</u>, Civil Action No. 07-2253-DJW, 2009 WL 902422, at 6-7 (D. Kan., Mar. 31, 2009), which similarly found that the plaintiff had no copyright infringement claim, and made no findings regarding the plaintiff's ownership of a copyright.

//

//

//

//

_____

[2] Notably, the only evidence of Paramount's ownership of the film proffered in this action is a filing with the Copyright and Patent Office, which, being filed some 36 years after creation, is not entitled to any presumption of validity. <u>Tuff 'N' Rumble Mgmt. v. Profile Records</u> 42 U.S.P.Q.2D (BNA) 1398 , 17 U.S.C. § 401(c)

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS**

**3.     Because Of The Substantial Difference In the Gravity  Of An Adverse Judgment In The SDNY Action As Opposed To This Action And The Italian Action, The Court Should Decline To Apply Collateral Estoppel.**

The Supreme Court in Parklane recognized that if, in the first action, a party may have less of an incentive to vigorously defend or pursue the action that it has in the second action the court is justified in declining to apply offensive collateral estoppel. Parklane Hosiery Co. v. Shore, supra, 439 U.S. 322, 330; Chicago Truck Drivers, Helpers and Warehouse Union Pension Fund v. Century Motor Freight, Inc., 125 F.3d 526, 531 (7th Cir. 1997).

In the SDNY Action, the evidentiary ruling leading to the adverse determination against IMF was based solely on the lack of an original document. IMF was simultaneously embroiled in an action in Italy regarding the authenticity of the same documents. (see, Decl. D Chodos ¶ 3). Multiple issues concerning international rules and procedures precluded IMF from obtaining anything more than the copies and the declarations of authenticity that it provided in response to Lucas's Motion for Summary Judgment.

More important, however, is that the implications of a loss in the SDNY Action against Lucas were minor  compared to the implications of a loss in Italy, because Italian law prevails with regards to ownership of the rights. Itar-Tass Russian News Agency v. Russian Kurier, Inc., 153 F.3d 82, 90-91 (2d. Cir. 1998) (Russian law applies to issue of copyright ownership and American law applies to infringement issue.) With this in mind, IMF's primary interest in obtaining and providing the original document was in Europe, not in New York, and its incentive to defend its claim of ownership was significantly lesser in SDNY Action than in Italy.

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS**

Similarly, in the present action, the Viacom Companies seek to deprive IMF of its ownership rights in the Film. As such, IMF has a much stronger incentive to defend itself in the instant action and should be afforded fair process to litigate the matter and conduct discovery against the party seeking to foreclose its ownership rights.

IMF did not have the same incentive in the SDNY Action. Had IMF prevailed against Lucas, it would have only obtained the right to collect money damages arising from a pornographer. Having lost at the trial court level, it had to measure the cost of an appeal and retrial against the prospect of colleting money damages from the proceeds from a sexually explicit adult film. The prospect of those damages was at best, nominal compared to the potential loss of revenue stemming from loss of ownership rights in the Film. One can assume from IMF's decision not to appeal the decision in the SDNY Action - the costs of pursuing the claim were not justified given the other matters at stake.

What IMF is facing here is an offensive move to completely deprive it of its copyright. Because IMF's incentive to defend itself in this action substantially outweighs any benefit it would have received in prevailing in the first action, pursuant to the rule in Parklane, the Court, in its discretion should deny the Viacom Companies' Motion.

IV.   **CONCLUSION**

The Viacom Companies' Motion should be denied because it is violates public policy and deeply rooted issues of fairness underlying the application of the doctrine of offensive collateral estoppel. First, Plaintiffs cannot offensively assert collateral estoppel where they had an opportunity to join in an earlier action. The Viacom Companies were aware of the SDNY Action and they choose to participate in it. Their decision to "wait and see" whether a favorable ruling would be achieved, without risking the possibility that they would be bound by an

unfavorable result, precludes them from asserting the doctrine against IMF in the present action. Second, the Viacom Companies cannot show that the issue of copyright ownership was affirmatively resolved in any prior actions. The only issue that was determined in the SDNY Action was that IMF did not (at that time) meet certain evidentiary burdens to pursue its claim. Further given significantly different potential adverse outcomes of the SDNY Action compared to the present action (loss of money damages versus loss of copyright ownership), substantial inequity would result if IMF is bared from defending itself in the instant action. For all of the foregoing reasons stated herein, we respectfully request that the Court exercise its judicial discretion in denying the Plaintiffs' Motion, to avoid an unlawful and more importantly, an unfair result.


Respectfully submitted,

DATED: March 19, 2012


                              CHODOS & ASSOCIATES
                              David Manning Chodos

                              ISAACMAN, KAUFMAN & PAINTER
                              Jack G. Cairl


                              By: ___/s/ David Manning Chodos____
                                      DAVID MANNING CHODOS


                              By: ___/s/ Jack G. Cairl____
                                      JACK G. CAIRL

                              Attorneys for Defendant
                              INTERNATIONAL MEDIA FILMS,
                              INC.

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION
FOR JUDGMENT ON THE PLEADINGS**