DAVID HALBERSTADTER (SBN 107033)
david.halberstadter@kattenlaw.com
REBECCA F. GANZ (SBN 265199)
rebecca.ganz@kattenlaw.com
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East
Suite 2600
Los Angeles, CA 90067-3012
Telephone:  310.788.4400
Facsimile:  310.788.4471

Attorneys for Plaintiffs
PARAMOUNT PICTURES CORPORATION
and MELANGE PICTURES LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARAMOUNT PICTURES CORPORATION, a Delaware corporation; and MELANGE PICTURES LLC, a Delaware corporation, | CASE NO.: CV11-09112-SJO (AJWx) |
| | **PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW (Local Rule 16-4)** |
| Plaintiffs, | |
| vs. | Pretrial Conference<br>Date: February 4, 2013<br>Time: 9:00 a.m.<br>Place: Courtroom 1 |
| INTERNATIONAL MEDIA FILMS, INC., a Nevada corporation, | |
| Defendant. | Trial Date:  February 12, 2013 |

Pursuant to Central District Local Rule 16-4, Plaintiffs Paramount Pictures Corporation ("Paramount") and Melange Pictures LLC ("Melange")(collectively, "Plaintiffs") hereby submit their Memorandum of Contentions of Fact and Law.

## I.    PRELIMINARY STATEMENT

### A.    Overview of The Lawsuit

For the past 50 years, Plaintiffs and their various predecessors in interest have lawfully distributed the classic Federico Fellini motion picture *La Dolce Vita* (the "Picture") throughout the United States and Canada. They have licensed the original, Italian language version, an English-language subtitled version and an English-language dubbed version of the Picture for exhibition in theaters, on broadcast and cable television, on college campuses and cruise ships, in parks and museums and elsewhere. Plaintiffs also have regularly granted permission to other entertainment companies to use clips from the Picture in their own films and television programs.

Melange owns United States copyright registrations for all three versions of the Picture (Italian language, English subtitled, English dubbed); Paramount is Melange's exclusive licensee.

Without any rights in the Picture whatsoever, Defendant International Media Films, Inc. ("IMF") has engaged in a brazen and improper course of licensing to third parties distribution rights to the Picture that IMF does not own, demanding that Paramount and its licensees cease and desist in their exploitation of the Picture, and generally holding itself out to the public as though it, rather than Plaintiffs, owns and controls the exclusive rights to exploit and distribute the Picture in the United States. It has even continued to engage in this infringing conduct after a federal court in New York fully and finally adjudicated - in a copyright infringement action in which IMF was the plaintiff - that IMF owns no such rights.  More specifically, a district court in the Southern District of New York granted summary judgment against IMF and in favor of the defendant in that action, finding that IMF lacked the evidence to establish even a *prima facie* case of its copyright ownership of the Picture because, among other things, its evidence of ownership was of questionable authenticity.

By its Complaint, Plaintiffs seek to put an end to IMF's (and its licensees') willful infringement of Plaintiffs' exclusive rights of copyright in the Picture. Among

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

other things, Plaintiffs seek judicial declarations that Melange is the exclusive owner of the United States copyright in the Picture, that Paramount is the exclusive licensee of all such rights and that IMF owns no such rights, and has never owned any such rights. Plaintiffs also seek damages and permanent injunctive relief for IMF's direct copyright infringement and on account of its secondary liability for infringement by IMF's licensees.

**B.**   **Factual Background**

The Picture was written and directed by the critically acclaimed director, Federico Fellini, in 1960. It was produced in Italy by Riama Films S.p.A. ("Riama"). The Picture was nominated for four Academy Awards, winning one, and also earned the Palme d'Or at the 1960 Cannes Film Festival.

Plaintiffs' "chain of title" to the Picture - *i. e.*, the series of grants and transfers through which Plaintiffs came to acquire the United States (and Canadian) rights, including copyrights, in the Picture - demonstrates a clear, unbroken and irrefutable chain from the creators of the Picture to Plaintiffs. This chain of title begins with an initial transfer in 1962 by Riama, the Picture's producer, to another entity, Cinemat S. A. ("Cinemat"), of all rights in the Picture worldwide, excluding Italy, France and their respective former colonies. That same year, Cinemat transferred to a United States company called Astor Pictures, Inc. ("Astor Pictures") all of Cinemat's United States and Canadian rights in the Picture. Upon that transfer, Cinemat confirmed and represented in writing that it had no further rights of any kind in the Picture in the United States and Canada. *This fact is critical because, as will be explained in greater detail below, IMF claims that its rights in the Picture derive from a purported transfer by Cinemat to another company in 1980, 18 years after its transfer to Astor Pictures.*

The United States and Canadian rights to the Picture thereafter passed through various entertainment and other companies (including a bankruptcy proceeding), and

3

eventually came to be owned by Republic Pictures Corporation ("Republic").[1]

Republic thereupon obtained and renewed United States copyright registrations for the English-language subtitled version of the Picture and the English-language dubbed version of the Picture.   In addition, Republic also "restored" the United States copyright in the original, Italian language version of the Picture, which had fallen into the public domain prior to Republic's acquisition of rights in the Picture, as a result of a prior owner's apparent failure to comply with certain formalities of the 1909 Copyright Act.[2]   The original, Italian-language version of the Picture is the subject of

---

[1]     Plaintiffs' chain of title can be summarized briefly as follows: Riama transferred its United States and Canadian rights in the Picture to Cinemat (1962); Cinemat transferred its United States and Canadian rights in the Picture to Astor Pictures (1962); Astor Pictures granted a security interest in its rights to Inland Credit Corporation ("Inland Credit") (1962); Inland Credit transferred its security interest to Landau Releasing Organization, Inc. ("Landau"), which was a subsidiary of The Landau-Unger Company ("Landau-Unger") (1965); Astor Pictures (through its trustee in bankruptcy) transferred its United States and Canadian rights in the Picture to Ardisco Financial Corporation ("Ardisco"), an affiliate of Inland Credit that subsequently merged with Inland Credit (1965); Ardisco transferred its United States and Canadian rights in the Picture to Unger Productions ("Unger"), another subsidiary of Landau-Unger (1967); Landau-Unger and its subsidiaries were then acquired by Commonwealth United Corporation (1967); in connection with that acquisition, all three Landau-Unger companies underwent name changes: parent company Landau-Unger became Commonwealth United Entertainment Corp. ("CUE"), Landau became Commonwealth United Productions, Inc. ("CUP"), and Unger became UPI Inc. ("UPI") (1967); CUE subsequently transferred its United States and Canadian rights in the Picture to National Telefilm Associates, Inc. ("NTA") (1971 - 1973); CUE changed its name to Iota Entertainment ("Iota") (1973); Iota transferred all of its outstanding stock to Redwood Investors Syndicate ("RIS") (1982); RIS transferred all of Iota's outstanding stock to NTA (in satisfaction of a secured loan) (1984); NTA merged with and changed its name to Republic (1985); Republic transferred its United States rights in the Picture to Melange (2005); and Melange granted exclusive distribution rights in the Picture to Paramount (2005).

[2]     An amendment to the Copyright Act enacted in 1994, known as the Uruguay Round Agreements Act ("URAA"), conferred protection on "restored works," vesting automatically on the date of restoration. *See generally* 17 U .S.C. § 104A.  Congress enacted the URAA in order to bring the United States into compliance with the Berne Convention, so that works of United States origin could be protected in other countries. To be restored to United States copyright protection, a work was required to be of foreign origin, from a country that was eligible for such protection, and which was still protected in the "source country" at the time of restoration. Id at § 104A(h). The work had to have fallen into the public domain in the United States for certain specified reasons, including noncompliance with the formalities of copyright protection imposed by United States law (e.g., failure of renewal, lack of proper copyright notice). *Id.* Qualifying works of foreign origin generally were deemed restored on January 1, 1996 if from a "source country" that either adhered to the Berne

**Katten**
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

4

**CASE NO. CV11-09112-SJO (AJWx)**

a "Restoration Notice" that was recorded by Republic in the United States Copyright Office on December 31, 1996, and a copyright registration that was issued to Republic by the United States Copyright Office on April 27, 1998.

### C.   IMF's Infringement of Plaintiffs' Rights in the Picture

For at least the last three years (and, in actuality, for longer than that), IMF has engaged in a course of copyright infringement by, among other things, purporting to license exclusive distribution rights in the Picture to third parties. Most significantly, IMF purported to grant to Koch-Lorber Films ("Koch") the exclusive right to distribute the Picture in home video formats (including on DVD) throughout North America. After Koch was acquired by E1 Entertainment ("E1"), IMF purported to grant E1 expanded and additional rights to distribute the Picture in North America. Under IMF's purported authority, Koch and now E1 have been actively distributing the Picture in home video formats and via the Internet in North America (including the United States and Canada).[3]

IMF justifies this willful infringement by claiming to have acquired ownership of the United States copyright in the Picture through a series of transactions that is irreconcilable with Plaintiffs' chain of title. IMF does not dispute that in 1962, Riama (the Picture's producer) transferred the worldwide rights in the Picture (excluding Italy, France and their respective former colonies) to Cinemat, which is the first "link" in Plaintiffs' chain of title.  To the contrary, this is the first link in IMF's claimed chain

_____

Convention or which was a World Trade Organization member country. *Id.* Italy is such a country; therefore, any works of Italian origin that were still entitled to copyright protection in Italy as of the date of the URAA were automatically restored to United States copyright protection on January 1, 1996.

[3]     In addition, IMF's Internet website features still images from the Picture.  On its website, IMF identifies the Picture as one of the films in its library.  On a separate, downloadable list of all of IMF's purported films, IMF states: "The highlights of the IMF library are the precious treasures La Dolce Vita and I Vitteloni by Federico Fellini."  IMF further represents on its website that it owns or controls the rights to the Picture throughout the world except for Italy and France, and that it holds these rights in perpetuity.  On the "About" page of its website, IMF claims that its owner and chief executive officer currently "is developing the classic film LA DOLCE VITA into a Broadway Musical."

Katten

KattenMuchinRosenmanLLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

5

of title, as well. IMF claims, however, that in 1980 - 18 years after Cinemat transferred its rights in the Picture to Astor Pictures and Cinemat acknowledged in writing that it had no further rights of any kind in the Picture in the United States and Canada - Cinemat purportedly transferred its United States rights in the Picture to a Liechtenstein company called Hor A.G. ("Hor"). These supposed rights then purportedly were transferred from one company to another, and eventually were acquired by IMF.

## II.   SUMMARY STATEMENT OF PLAINTIFFS' CLAIMS

Each of Plaintiffs' claims for relief is summarized below.

### A.   First Claim for Relief – Declaratory Relief

Plaintiffs seek a judicial declaration that IMF does not own, and at no time has owned, the United States copyright in the Picture.

As originally pleaded, this claim for relief was based in part upon the fact that IMF should be barred by the doctrine of collateral estoppel from seeking to establish its United States copyright ownership of the Picture.  Plaintiffs originally alleged that by commencing its own action for copyright infringement against a third party in the United States District Court for the Southern District of New York (the "SDNY Action"), IMF had put its copyright ownership of the Picture squarely in issue; and, because the defendant in the SDNY Action directly challenged IMF's copyright ownership on summary judgment, and summary judgment was granted *against* IMF on that issue, IMF was precluded from re-litigating its copyright ownership of the Picture in this action.[4]

---

[4]     The defendant in the SDNY Action filed a motion for summary judgment, asserting that IMF could not satisfy its burden of establishing copyright ownership of the Picture.  In support of that motion, the defendant provided the district court with evidence that several of the documents in IMF's supposed chain of title were not authentic.  For example, an expert on Italian copyright law opined that IMF's documents "were created in circumstances which suggest they may well be the result of forgery or manipulation."  One of the documents that the expert considered most suspicious was the alleged 1980 agreement between Cinemat and Hor, described above.  The Court in the SDNY Action fully examined IMF's purported chain of title

6

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

31723972v2

Plaintiffs in this action sought judgment on the pleadings on their First Claim for Relief based upon the application of collateral estoppel. However, this Court declined to apply collateral estoppel against IMF.

Even if IMF is not precluded by principles of issue preclusion and the doctrine of collateral estoppel from seeking to establish its United States copyright ownership of the Picture, Plaintiffs are entitled to the requested declaratory relief, in any event. IMF cannot demonstrate that it holds a valid chain of title to the Picture because – if for no other reason – the second entity in IMF's purported chain of title (Cinemat) purported to transfer rights to the Picture in 1980 that it had not owned for more than 18 years, having transferred those rights to Astor Pictures (the third entity in Plaintiffs' chain of title) in 1962.

### B.    Second Claim for Relief – Declaratory Relief

Plaintiffs seek a judicial declaration that Plaintiffs own, and at all relevant times exclusively owned, the United States copyright in the Picture.

### C.    Third Claim for Relief -- Direct Copyright Infringement

Plaintiffs claim that IMF has engaged in acts of direct, willful infringement of Plaintiffs' exclusive rights of copyright in the Picture.

### D.    Fourth Claim for Relief -- Contributory Liability For Copyright Infringement

Plaintiffs claim that IMF is contributorily liable for the direct infringement of Plaintiffs' exclusive rights in the Picture by third parties to which IMF purported to grant rights because, among other things, IMF had actual knowledge of the infringement that has occurred and continues to occur and IMF has caused, enabled, facilitated, and materially contributed to that  infringement.

---

documents in conjunction with the summary judgment motion, and concluded that IMF could not prove its copyright ownership of the Picture.  It found, among other things, that IMF could not authenticate the documents in its supposed chain of title, that there was evidence to suggest that documents in IMF's supposed chain of title were not authentic and, ultimately, that IMF was not capable of meeting its *prima facie* burden of proof as to copyright ownership of the Picture. The Court granted summary judgment against IMF on March 31, 2010.

### E. Fifth Claim for Relief -- Vicarious Liability For Copyright Infringement

Plaintiffs claim that IMF is vicariously liable for the direct infringement of Plaintiffs' exclusive rights in the Picture by third parties to which IMF purported to grant rights because, among other things, (i) IMF had (and continues to have) the right and ability to control and/or supervise the infringing conduct of its licensees, and (ii) had (and continues to have) a direct financial interest in, and derived (and continues to derive) substantial financial benefit from, the direct infringement by its licensees of Plaintiffs' exclusive rights in the Picture.

### III. ELEMENTS REQUIRED TO ESTABLISH PLAINTIFFS' CLAIMS

The elements required to establish each of Plaintiffs' claims for relief are summarized below.

### A. First Claim for Relief – Judicial Declaration That IMF Does Not Own, And At No Time Owned, The United States Copyright In The Picture

Because this claim for relief simply seeks a judicial declaration as to copyright ownership, the only element that must be established is that IMF does not hold a valid chain of title to the United States copyright in the Picture.

### B. Second Claim for Relief – Judicial Declaration That Plaintiffs Exclusively Own, And At All Relevant Times Have Exclusively Owned, The United States Copyright In The Picture

Because this claim for relief simply seeks a judicial declaration as to copyright ownership, the only element that must be established is that Plaintiffs hold a valid chain of title to the United States copyright in the Picture.

Katten

Katten Muchin Rosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

8

31723972v2

## C.   Third Claim for Relief -- Direct Copyright Infringement

In order to establish an entitlement to recovery for direct copyright infringement, a plaintiff must prove (i) its ownership of the copyright in the work at issue, and (ii) the defendant's unauthorized exploitation of those rights, including by distribution of the work without authority from the copyright owner.  See Manual of Model Jury Instructions for the Ninth Circuit 17.0, 17.4 (2007) ("Model Instructions"); see also Feist Publications v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991); S.O.S., Inc., v. Payday, Inc., 886 F.2d 1081, 1085 n.3 (9th Cir. 1989).

Pursuant to 17 U.S.C. § 504, an infringer of copyright is liable for either the copyright owner's actual damages and any additional profits of the infringer, or statutory damages.  Id. at § 504(a); see also Model Instructions 17.22, 17.23, 17.24. More specifically, the copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.  Id. at § 504(b); see also Model Instructions 17.22, 17.23.

Alternatively, the copyright owner may elect at any time before final judgment is rendered to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, in a sum of not less than $750 or more than $30,000, as the court considers just.  Id. at § 504(c)(1); see also Model Instructions 17.24.  If the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000.  Id. at § 504(c)(2); see also Model Instructions 17.27.

9

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

31723972v2

**D.** **Fourth Claim for Relief -- Contributory Liability For Copyright Infringement**

In order to establish an entitlement to recovery for contributory copyright infringement, a plaintiff must prove its copyright ownership of the work at issue, just as in the case of a claim for direct copyright infringement.  A plaintiff also must prove that a third party engaged in acts constituting direct copyright infringement, that the defendant had actual knowledge of that direct infringement, and that the defendant caused, enabled, facilitated, and/or materially contributed to that  infringement.  See Model Instructions 17.0, 17.21 (2007); see also Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 261-63 (9th Cir. 1996); Ellison v. Robertson, 357 F.3d 1072, 1076 (9th Cir. 2004).

Proof of damages is the same for contributory infringement as for direct infringement.

**E.** **Fifth Claim for Relief -- Vicarious Liability For Copyright Infringement**

In order to establish an entitlement to recovery for vicarious copyright infringement, a plaintiff must prove its copyright ownership of the work at issue, just as in the case of a claim for direct copyright infringement.  A plaintiff also must prove that a third party engaged in acts constituting direct copyright infringement, that the defendant had the right and ability to control and/or supervise the infringing conduct, and that the defendant had a direct financial interest in, and derived financial benefit from, the direct infringement.  See Model Instructions 17.0, 17.20 (2007); see also Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 125 S. Ct. 2764, 2776 n.9 (2005); Ellison v. Robertson, 357 F.3d 1072, 1076 (9th Cir. 2004).

Proof of damages is the same for vicarious infringement as for direct infringement.

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

31723972v2

## IV.   <u>DESCRIPTION OF KEY EVIDENCE SUPPORTING PLAINTIFFS' CLAIMS</u>

The key evidence supporting Plaintiffs' claims is almost entirely documentary. Plaintiffs maintain in the regular course of their business documents evidencing and establishing their ownership of rights in each motion picture and television production in their respective libraries.  As is typically the case with respect to older motion pictures, the rights in and to those motion pictures have changed hands numerous times over the years.  Plaintiffs maintain as business records the agreements that reflect each "link" in the chain of title, commencing with the work's creator and ending with Plaintiffs.[5]  Plaintiffs will offer such records to establish the complete chain of title from the producers of the Picture to Plaintiffs.  (See footnote 1 above for an overview of the various transfers in Paramount's chain of title.)[6]

In addition, there are numerous other documents that corroborate and support the various transfers that have taken place since the United States and Canadian rights to the Picture were first transferred in 1962 to Astor Pictures (the first company to distribute the Picture in the United States), including documents that evidence the distribution of the Picture by the various companies that obtained those rights.  These documents comprise, among other things, newspaper articles, corporate Annual Statements, and public records such as corporate name changes, corporate merger documents, court filings and documents recorded in the Copyright Office.[7]

---

[5]      Before Plaintiffs obtained their rights in the Picture from Republic Entertainment, Republic likewise maintained a complete chain of title to the Picture as part of its business records.  When Plaintiffs succeeded to Republic's rights in the Picture, they also "inherited" Republic's chain of title documents.

[6]      Each of these documents is admissible on one or more of the following grounds:  (1) business records exception to the rule against hearsay (FRE 803(6)); (2) public records (FRE 803(8)); (3) records of documents that affect an interest in property (FRE 803(14)); and/or (4) "ancient documents" (FRE 901(a)(8) and 803(16)).

[7]      Each of these documents is admissible on one or more of the following grounds:  (1) public records (FRE 803(8)); (2) records of documents that affect an interest in property (FRE 803(14)); and/or (3) "ancient documents" (FRE 901(a)(8) and 803(16)).

31723972v2

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

Likewise, the key evidence supporting IMF's direct, contributory and vicarious infringement is primarily documentary, in this case, derived from documents produced by IMF in discovery.

Finally, the evidence of IMF's profits is derived from documents that IMF produced during the course of discovery.

## V.   DESCRIPTION OF KEY EVIDENCE IN OPPOSITION TO IMF'S AFFIRMATIVE DEFENSES

IMF's operative pleading is its First Amended Answer to Complaint.  Therein, IMF has asserted no fewer than 19 separate affirmative defenses.[8]  Many of them do not actually qualify as affirmative defenses; others are merely the converse of various of Plaintiffs' allegations; and others are virtually incomprehensible.   Plaintiffs propounded document requests and interrogatories to IMF which sought, respectively, the production of documents, and the facts and the identity of witnesses in possession of facts, supporting each of IMF's affirmative defenses. IMF provided no documents

---

[8]   IMF asserted the following affirmative defenses:  (1) failure to state a claim; (2) failure to state facts sufficient to establish any basis for awarding damages, including statutory damages and attorneys' fees; (3) the claims of copyright infringement are barred by the applicable limitations period; (4) Plaintiffs' claims, in whole or in part, are barred because the rights to the Picture at relevant times were owned by IMF; (5) Plaintiffs' copyright registrations were procured by fraud and/or are invalid; (6) if IMF used, displayed, or distributed the allegedly infringed works, it was a bona fide purchaser of the right to do so and if IMF has infringed any copyright interest held by Plaintiffs, it did so with innocent intent; (7) waiver; (8) estoppel; (9) acquiescence; (10) consent; (11) unclean hands; (12) laches; (13) "failure to do equity;" (14) failure to mitigate damages; (15) failure to allege a proper claim for relief under the Federal Declaratory Judgment Act; (16) any damage to Plaintiffs resulted from the negligence of parties, persons and/or entities other than IMF; (17) unjust enrichment; (18) Plaintiffs seek a multiple recovery for the same averred wrong or wrongs; and finally (19) "any damages Plaintiffs may have suffered was caused in whole or in part by the wrongful representations, acts, or omissions of parties other than IMF, whereas any representations, acts, or omissions of IMF, if any, were without negligence, carelessness, or unlawfulness of any kind, and were secondary and passive to such other parties. To the extent IMF is found liable in any amount, IMF is entitled to full and complete equitable indemnity from such other parties. In the alternative, IMF is entitled to partial equitable indemnity from such other parties."

or information other than that which pertained to its own purported chain of title to the Picture.

Plaintiffs do not at this point know which of these affirmative defenses Plaintiffs intend to pursue at trial and which of them will be abandoned. Accordingly, Plaintiffs are unable at this point to describe the key evidence that would be offered in opposition to the affirmative defenses that IMF plans to pursue, other than the same documents that support Plaintiffs' claims for relief.

## VI.   ANTICIPATED EVIDENTIARY ISSUES

IMF has raised the possibility that it may seek to challenge the authenticity of certain of Plaintiffs' chain of title documents. To date, however, IMF has focused this potential challenge only upon the documents evidencing the 1962 transfer of rights from Cinemat to Astor Pictures. IMF has not fully articulated the grounds for this possible challenge (it filed no motions in limine).

Plaintiffs' position is that the authenticity of each of the documents in their chain of title to the Picture will be established by one or more methods. Preliminarily, it should be noted that a party's burden to establish a document's authenticity is minimal. Federal Rule of Evidence 901(a) provides generally that "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."

Therefore, the proponent need not conclusively prove that a piece of evidence is authentic; "[a]ll that is required is a foundation from which the fact-finder could legitimately infer that the evidence is what the proponent claims it to be." McQueeney v. Wilmington Trust Co., 779 F.2d 916, 928 (3d Cir. 1985).[9] Although authenticity is a condition precedent to admissibility, "[t]he burden of proof for authentication is slight." Id.

---

[9]    See also United States v. Goichman, 547 F.2d 778, 784 (3d Cir.1976) ("Once a prima facie case is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court.")

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

Plaintiffs' witnesses will directly authenticate certain of the documents in Plaintiffs' chain of title to the Picture by testifying with personal knowledge that the documents in question are what they purport to be.  Fed.R.Evid. 901(b)(1).  Other documents in Plaintiffs' chain of title will be authenticated by evidence that they were recorded or filed in a public office as authorized by law.  Fed.R.Evid. 901(b)(7)(A).  And other documents in Plaintiffs' chain of title to the Picture qualify as "ancient documents," in that they are in a condition that creates no suspicion about their authenticity,[10] they are in a place where, if authentic, they would likely be, and they are more than 20 years old when offered.  Fed.R.Evid. 901(b)(8).

## VII.  ANTICIPATED ISSUES OF LAW

There are no presently anticipated issues of law.

## VIII.  BIFURCATION OF ISSUES

Plaintiffs do not seek any bifurcation of issues.

## IX.  JURY TRIAL

Both Plaintiffs and Defendant have requested a jury trial.  However, certain of Plaintiffs' claims – specifically the First and Second Claims for Relief, which seek declaratory relief – must be tried to the Court.  See generally, Doe v. Gallinot, 657 F.2d 1017, 1024 (9th Cir. 1981) ("Whether or not to grant a declaratory judgment is a matter committed to the sound discretion of the district court").

---

[10]    Although Rule 901(b)(8) requires that ancient documents must be in a condition that creates no suspicion about their authenticity, that suspicion "does not go to the content of the document but rather to whether the document is what it purports to be." United States v. Kairys, 782 F.2d 1374, 1379 (7th Cir. 1986).  Whether the document's contents are trustworthy, accurate, or complete does not bear upon authenticity, but "upon the weight to be accorded the evidence." Id. at 1379; see also U.S. v. Demjanjuk, 367 F.3d 623, 631 (6th Cir. 2004); United States v. Stelmokas, 100 F.3d 302, 312 (3d Cir.1996); Twentieth Century Fox Film Corp. v. Dastar Corp., 2000 WL 35503105 (C.D.Cal. 2000); see generally, Wright & Gold, Federal Practice and Procedure: Evidence § 7113.

14

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

However, since the evidence now appears to be more substantially based upon documents than on witness testimony and because it would be more efficient and economical to have the entire case tried to the Court, Plaintiffs are prepared to waive a jury trial on their Third through Fifth Claims for Relief.

## X.   ATTORNEYS' FEES

Attorneys' fees are recoverable pursuant to 17 U.S.C. § 505, which provides: "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."

## XI.   ABANDONMENT OF ISSUES

Plaintiffs have not abandoned any issues.

Dated:  January 14, 2013

KATTEN MUCHIN ROSENMAN LLP
David Halberstadter
Rebecca F. Ganz


By:   /s/
          David Halberstadter
Attorneys for Plaintiffs
PARAMOUNT PICTURES CORPORATION
and MELANGE PICTURES LLC

31723972v2