1  DAVID HALBERSTADTER (SBN 107033)
   david.halberstadter@kattenlaw.com
2  REBECCA F. GANZ (SBN 265199)
   rebecca.ganz@kattenlaw.com
3  KATTEN MUCHIN ROSENMAN LLP
   2029 Century Park East
4  Suite 2600
   Los Angeles, CA 90067-3012
5  Telephone: 310.788.4400
   Facsimile: 310.788.4471
6
   Attorneys for Plaintiffs
7  PARAMOUNT PICTURES CORPORATION
   and MELANGE PICTURES LLC
8

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11 | PARAMOUNT PICTURES          ) CASE NO.: CV11-09112-SJO (AJWx)
   | CORPORATION, a Delaware     )
12 | corporation; and MELANGE PICTURES ) [Hon. James S. Otero]
   | LLC, a Delaware corporation, )
13 |                             ) **DECLARATION OF RICHARD**
   |              Plaintiffs,     ) **REDLICH, JR. IN SUPPORT OF**
14 |                             ) **MOTION FOR SUMMARY**
   |        vs.                  ) **JUDGMENT OR, IN THE**
15 |                             ) **ALTERNATIVE, PARTIAL**
   | INTERNATIONAL MEDIA FILMS,  ) **SUMMARY JUDGMENT**
16 | INC., a Nevada corporation,  )
   |                             ) [*Filed concurrently with Notice of*
17 |              Defendant.      ) *Motion and Motion for Partial Summary*
   |                             ) *Judgment; [Proposed] Statement of*
18 |                             ) *Uncontroverted Facts and Conclusions*
   |                             ) *of Law; Notices of Lodging; and*
19 |                             ) *Declarations of Stephanie Woodhead*
   |                             ) *and David Halberstadter*]
20 |                             )
   |                             ) Date:    June 3, 2013
21 |                             ) Time:    10:00 a.m.
   |                             ) Place:   Courtroom No. 1
22 |                             )
23
24
25
26
27
28

              **DECLARATION OF RICHARD REDLICH, JR.**

1  **DECLARATION OF RICHARD REDLICH, JR.**

2  RICHARD REDLICH, JR. declares as follows:

3       1.    I am currently a Senior Vice President, Business Affairs and Legal, for

4  Plaintiff Paramount Pictures Corporation ("Paramount"). I have been employed by

5  Paramount since 2004. Previously, from approximately 1995 to 1998, I was

6  employed by Republic Entertainment Inc., which subsequently became Republic

7  Entertainment LLC ("Republic"). I have personal knowledge of the facts set forth in

8  this Declaration, except for matters that have been stated based upon my information

9  and belief; and if I were called as a witness in this action, I could and would

10  competently testify to those facts under oath.

11       2.    During the time that I was employed by Republic, I participated in the

12  process of organizing all of its business files, including its chain of title documents for

13  the various motion pictures and other entertainment works that Republic owned. The

14  overall process involved reviewing the contents of and categorizing each and every

15  box of business records that Republic had stored in a vast warehouse space, and then

16  inputting all of that information into a searchable database. The end result was the

17  creation of a computerized database that could be searched by numerous criteria (e.g.,

18  title of film or the name of an actor, director, writer, producer or production company)

19  in order to locate and review the applicable business records.

20       3.    Based upon my information and belief, a series of corporate transactions

21  that took place in the 1990s resulted in Paramount assuming the business of Republic.

22  The specifics of these transactions are not relevant to this Motion, but in general, it is

23  my understanding that in the 1990s, Spelling Entertainment acquired Republic

24  Pictures, and Viacom ultimately acquired 100% of Spelling Entertainment. It is my

25  further understanding that in or about late 2005, as part of the process of a corporate

26  restructuring, ownership of the copyrights and the distribution rights in the films

27  comprising the Republic library were formally transferred to Melange Pictures LLC

28

Katten
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1

**DECLARATION OF RICHARD REDLICH, JR.**

1   ("Melange"), which then granted exclusive distribution rights to the films in that
2   library to Paramount.

3       4.    As a result of these transactions, Paramount essentially inherited not only
4   Republic's film library, but also its extensive business records and the searchable
5   computerized database of those records.  Since the time that I have been employed by
6   Paramount, I regularly have made use of this database and the former business records
7   of Republic in the ongoing course of my work for Paramount.  Paramount relies on
8   the accuracy of these Republic business records in the ordinary course of business.  In
9   short, Paramount considers and treats these business records as its own.

10      5.    In connection with the preparation of this Declaration, I reviewed all of
11  the documents evidencing the chain of title from the original producer of the motion
12  picture *La Dolce Vita* (the "Picture") to Melange and Paramount (collectively,
13  "Plaintiffs").  This chain of title comprises agreements between various companies by
14  which the United States and Canadian rights in the Picture were transferred from one
15  entity to another; documents evidencing corporate mergers, acquisitions and name
16  changes that are relevant to Plaintiffs' chain of title to the Picture; and various internal
17  corporate documents that were created by various of Plaintiffs' predecessors-in-
18  interest to the United States and Canadian rights in the Picture.

19      6.    While it is the exhibits to this Declaration themselves that evidence the
20  series of transactions and events that result in Plaintiffs' ownership of the United
21  States and Canadian rights to the Picture, my testimony is intended to provide some
22  clarity and organization to a chronology that spans nearly 40 years.

23  **From The Producer to Cinemat and From Cinemat to Astor Pictures, Inc.**

24      7.    It is my general understanding that the Picture was produced in Italy in
25  1960 by Riama Films S.p.A. ("Riama"), and that it was written and directed by the
26  critically acclaimed director, Federico Fellini.

27      8.    Included in Republic's files (which are now a part of Paramount's files)
28  is an agreement dated January 7, 1962 between Cinemat S.A. ("Cinemat") and Astor

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

1    Pictures International, Inc. ("Astor International"), pursuant to which Cinemat agreed
2    to transfer to Astor International all of the worldwide rights in the Picture, excluding
3    only France, Italy and their respective former colonies.  Because IMF has indicated an
4    intention to question the authenticity and validity of this agreement (the "Cinemat-
5    Astor International Agreement"), I will discuss the various non-identical copies of the
6    agreement that are in Plaintiffs' possession, and where and how they are maintained.

7        9.      Plaintiffs are in possession of three non-identical copies of the Cinemat-
8    Astor International Agreement, all of which were "inherited" from Republic.  All
9    three copies were maintained, and continue to be maintained, in an original file folder
10   that bears the label "Republic Business Affairs."  A true and correct copy of this file
11   folder is attached hereto as Exhibit 1.  True and correct copies of the three, non-
12   identical versions of the Cinemat-Astor International Agreement are attached hereto as
13   Exhibits 2, 3 and 4, respectively.  Each copy will be described in turn.

14       10.     The first copy of the Cinemat-Astor International Agreement that is
15   included in the former Republic Business Affairs file (Exhibit 2 to this Declaration)
16   appears to have been typewritten or "carbon-copied" onto an onionskin-like paper.  It
17   is yellowed and has a "crinkly" texture.  Stapled to the first page of Exhibit 2 is a
18   narrow strip of onionskin paper onto which has been typewritten what appears to be
19   an insert to the Cinemat-Astor International Agreement.  Accordingly, Exhibit 2
20   contains two images of page 1 of the Cinemat-Astor International Agreement:  the
21   first image shows page 1 with the stapled insert, which obscures some of the typing on
22   page 1 itself; the second image shows page 1 with the stapled insert folded back, so
23   that the previously-obscured text of page 1 is visible.  The language on this strip of
24   paper is completely irrelevant to Plaintiffs' chain of title to the Picture, but it is one of
25   the aspects of the document that IMF may identify as a basis for questioning the
26   authenticity of the Cinemat-Astor International Agreement.

27       11.     This onionskin copy of the Cinemat-Astor International Agreement also
28   includes a number of original handwritten insertions, deletions and comments, none of

1   which is relevant to Plaintiffs' chain of title but which evidence the authenticity of the

2   document.  These handwritten notations appear on pages 3, 7, 12, 13 and 16 of the

3   agreement.  Page 17 of the agreement contains "/s/" marks and the printed names of

4   the agreement's signatories, all in original, blue ink.

5       12.    The second copy of the Cinemat-Astor International Agreement that is

6   included in the former Republic Business Affairs file (Exhibit 3 to this Declaration)

7   appears to be a traditional photocopy.  This version of the Cinemat-Astor International

8   Agreement contains a number of handwritten comments that appear to have been

9   made on the document before it was photocopied, and which generally appear in the

10  left-hand margin.   These handwritten notations appear to identify portions of the

11  Cinemat-Astor  International  Agreement  that  were  affected  by  a  subsequent,

12  supplemental agreement dated July 25, 1962 (which is discussed in paragraph 19

13  below).  The handwritten notations appear on pages 1, 6, 9, 10, 12, 13, 14, and 16  of

14  this version of the Cinemat-Astor International Agreement.

15      13.    Stapled to page 10 of this photocopied version of the Cinemat-Astor

16  International Agreement is a narrow strip of paper that contains the same insert that

17  was stapled to the first page of Exhibit 2.  Accordingly, Exhibit 3 contains two images

18  of page 10:  the first image shows page 10 with the stapled insert, which obscures

19  some of the typing on page 10 itself; the second image shows page 10 with the stapled

20  insert folded back, so that the previously-obscured text of page 10 is visible.  Based

21  upon my review of all three versions of the Cinemat-Astor International Agreement in

22  Plaintiffs' possession, it appears to me that the strip of paper was intended to insert

23  language into paragraph 7 of the agreement (over which the strip has been stapled on

24  Exhibit 3).  Once again, the inserted language is completely irrelevant to Plaintiffs'

25  chain of title to the Picture, but it is a characteristic of the document that IMF may

26  identify as a basis for questioning the authenticity of the Cinemat-Astor International

27  Agreement.

28

DECLARATION OF RICHARD REDLICH, JR.

14. The third copy of the Cinemat-Astor International Agreement that is included in the former Republic Business Affairs file (Exhibit 4 to this Declaration) is on paper that appears to have aged considerably and is dark yellow to light brown in color. Handwritten signatures (though not in original, "wet ink") appear on page 17 of the agreement.

15. This version of the Cinemat-Astor International Agreement contains none of the handwritten notations that appear on the onionskin version (Exhibit 2) or the photocopied version (Exhibit 3). But a strip of paper is stapled to page 10 of this aged copy of the Cinemat-Astor International Agreement, and contains the same language as the strip that was stapled to page 1 of the onionskin version of the agreement and page 10 of the photocopied version. Accordingly, Exhibit 4 contains two images of page 10 of the Cinemat-Astor International Agreement: the first image shows page 10 with the stapled insert, which obscures some of the typing on page 10 itself; the second image shows page 10 with the stapled insert folded back, so that the previously-obscured text of page 10 is visible.

16. I understand that IMF may also seek to question the validity of the Cinemat-Astor International Agreement on the basis that as of the date of this agreement (January 7, 1962), Cinemat had not yet acquired the rights in the Picture that the agreement transfers to Astor International. The express provisions of the Cinemat-Astor International Agreement deal with this circumstance by providing that Cinemat would not transfer any copyrights in the Picture to Astor International until Astor International had made payment in full, and by making clear that, in the interim, those rights would continue to be held by the Picture's producer (Riama) and/or Cinemat. In providing this testimony, it is not my intention to offer secondary evidence of the contents of the Cinemat-Astor International Agreement, but rather, to draw the Court's attention to the relevant contract provisions.

17. The Cinemat-Astor International Agreement provides, among other terms and conditions, that in consideration for Cinemat's grant of rights in the Picture, Astor

1   International would pay Cinemat the total sum of $1.5 million, in accordance with a
2   payment schedule set forth in the Cinemat-Astor International Agreement.   Astor
3   International's obligation to make installment payments of the purchase price for the
4   rights in the Picture was evidenced by a series of promissory notes, in a form and
5   amount that was set forth in the Cinemat-Astor International Agreement and its
6   exhibits.   Paragraph 5 of the Cinemat-Astor International Agreement expressly
7   provides: "It is agreed that until the completion of all payments required to be made
8   by the Purchaser [i.e., Astor International] to the Seller [i.e., Cinemat] in accordance
9   with Paragraph 3 herein: . . . b) All copyrights to the Film and registrations if and
10  where existing thereof shall remain in the name of the Producers [i.e., Riama] and/or
11  the Seller."

12      18.   Republic's former files (which are now a part of Paramount's files) also
13  contain a copy of an agreement dated March 9, 1962 between Riama (the Picture's
14  producer) and Cinemat, pursuant to which Riama transferred to Cinemat all of its
15  rights in the Picture worldwide, excluding only France, Italy and their respective
16  former colonies (the "Riama-Cinemat Agreement").   A true and correct copy of the
17  Riama-Cinemat Agreement is attached hereto as Exhibit 5.

18      19.   Republic's former files also contain a copy of a written assignment,
19  executed by Cinemat and dated July 25, 1962, pursuant to which Cinemat assigned to
20  Astor Pictures, Inc. (not Astor International) the United States and Canadian rights in
21  the Picture (the "Cinemat Assignment").   A true and correct copy of the Cinemat
22  Assignment is attached hereto as Exhibit 6.  The Cinemat Assignment states, among
23  other things, that Cinemat (i) assigns to Astor Pictures, Inc. ("Astor Pictures") all of
24  Cinemat's right, title and interest in and to the copyrights in the Picture for the United
25  States and Canada; (ii) assigns to Astor Pictures all of Cinemat's right, title and
26  interest in and to the right of renewal of said copyrights; and (iii) consents to the
27  registration of the Cinemat Assignment.

28

**DECLARATION OF RICHARD REDLICH, JR.**

1       20.    Republic's former files also contain a copy of a letter agreement between

2   Cinemat and Astor Pictures dated July 26, 1962 (the "Cinemat-Astor Pictures

3   Agreement").  A true and correct copy of the Cinemat-Astor Pictures Agreement is

4   attached hereto as Exhibit 7.  This agreement explains the circumstances under which

5   Cinemat assigned the United States and Canadian rights in  the Picture to Astor

6   Pictures.

7       21.    The Cinemat-Astor Pictures Agreement recites that pursuant to the

8   Cinemat-Astor International Agreement (Exhibits 2, 3 and 4 of this Declaration), the

9   rights in the Picture that had been transferred to Astor International included the rights

10  in the Picture in the United States and Canada.  The Cinemat-Astor Pictures

11  Agreement further recites that subsequent to the execution of the Cinemat-Astor

12  International Agreement in January 1962, Astor International transferred to Astor

13  Pictures all of Astor International's United States and Canadian rights in the Picture,

14  and that Cinemat consents to the transfer of United States and Canadian rights in the

15  Picture to Astor Pictures.

16      22.    The Cinemat-Astor Pictures Agreement further provides that, in

17  consideration of the payment to Cinemat of $350,000, all of which has been paid as of

18  the date of the agreement, Cinemat "has no further rights of any kind in and to the

19  Film in the United States-Canada Territory" and that "[p]ayment for all such rights

20  has been made in full."

21  **From Astor Pictures To The Landau-Unger Company To Commonweath United**

22  **Entertainment**

23      23.    Republic's former files also contain a copy of a Mortgage of Chattels

24  dated August 21, 1962 between Astor Pictures and Inland Credit Corporation ("Inland

25  Credit"), pursuant to which Astor Pictures granted a security interest in its rights in the

26  Picture (as well as its rights in other motion pictures) to Inland Credit as collateral for

27  a loan.  A true and correct copy of the Mortgage of Chattels is attached hereto as

28  Exhibit 8.

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

7

**DECLARATION OF RICHARD REDLICH, JR.**

24.     Based upon bankruptcy records in Plaintiffs' possession, it appears that sometime after entering into the Mortgage of Chattels described above, Astor Pictures filed for bankruptcy.  Pursuant to a Trustee's Bill of Sale dated June 29, 1965, Astor Pictures' bankruptcy trustee assigned all of Astor Pictures' rights in the Picture (i.e., all rights in the United States and Canada) to Ardisco Financial Corporation ("Ardisco").  A true and correct copy of the Trustee's Bill of Sale is attached hereto as Exhibit 9.

25.     Republic's former files also contain a copy of an abstract of a Mortgage Purchase Agreement that evidences that in September 1965, Inland Credit sold its security interest in the United States and Canadian rights in the Picture (which it had obtained from Astor Pictures pursuant to Exhibit 8) to Landau Releasing Organization, Inc. ("Landau Releasing").  A true and correct copy of that abstract is attached hereto as Exhibit 10.

26.     A number of documents that I located in Republic's former files evidence that Landau Releasing at the time was a subsidiary of The Landau-Unger Company ("Landau-Unger").  Attached hereto as Exhibit 11 is a true and correct copy of an August 14, 1967 Inter-Office Memorandum of Commonwealth United Corporation ("CUC"), which acquired Landau-Unger and its subsidiaries around the time of this memorandum (see paragraphs 27 and 28 below), which memorandum makes reference to name changes for Landau-Unger and its subsidiaries.  Attached hereto as Exhibit 12 is a true and correct copy of CUC's 1968 Prospectus, which also identifies Landau-Unger and its various subsidiaries.  And attached hereto as Exhibit 13 is a true and correct copy of another internal CUC Memorandum dated February 11, 1970 regarding "Liquidation of Subsidiaries," which includes a corporate organizational chart that evidences, among other things, some of the subsidiaries of Landau-Unger.

27.     These same documents also evidence that another of Landau-Unger's subsidiaries at the time was Unger Productions, Inc. ("Unger Productions").  These

8

**DECLARATION OF RICHARD REDLICH, JR.**

1  documents also evidence that in or about August 1967, Landau-Unger and all of its
2  subsidiaries were acquired by CUC.

3      28.    These same documents also evidence that following CUC's acquisition
4  of Landau-Unger, Landau-Unger and its subsidiaries went through name changes:  (a)
5  the name of Landau-Unger was changed to Commonwealth United Entertainment
6  Corp. ("CUE"); (b) the name of Landau Releasing was changed to Commonwealth
7  United Releasing Organization ("CURO"), and (3) the name of Unger Productions,
8  Inc. was changed to UPI Productions, Inc. ("UPI").  In addition, attached hereto as
9  Exhibit 14 is a true and correct copy of a Certificate of Amendment of Certificate of
10  Incorporation of Unger Productions, Inc., dated August 15, 1967.

11      29.    By an Assignment dated January 30, 1969, Ardisco assigned all of its
12  rights in the Picture (i.e., the United States and Canadian rights that it had acquired out
13  of Astor Pictures' bankruptcy) to Unger Productions.  Attached hereto as Exhibit 15 is
14  a true and correct copy of this Assignment.
15  **From CUE To National Telefilm Associates, Inc.**

16      30.    The former files of Republic also contain an agreement dated as of June
17  30, 1971 between CUE (formerly Landau-Unger) and National Telefilm Associates,
18  Inc. ("NTA"), by which CUE granted to NTA the exclusive and perpetual right to
19  distribute the Picture in the United States and Canada for broadcast television
20  exhibition, non-theatrical 8 mm and 16 mm uses, theatrical exhibition in Canada only,
21  and cable television exhibition (the "NTA Television Rights Agreement").  A true and
22  correct copy of the NTA Television Rights Agreement, which has been redacted to
23  eliminate financial information pertaining to other motion picture titles, is attached
24  hereto as Exhibit 16.

25      31.    The former files of Republic also contain a separate agreement between
26  CUE and NTA dated as of June 29, 1972, by which CUE also granted NTA the
27  exclusive and perpetual right to distribute the Picture in the United States and Canada
28

9

**DECLARATION OF RICHARD REDLICH, JR.**

for theatrical exhibition (the "NTA Theatrical Rights Agreement").  A true and correct copy of the NTA Television Rights Agreement is attached hereto as Exhibit 17.

32.   In connection with this action, I independently obtained from the New York State Department of State a document entitled "Entity Information for The-Landau Unger Company."  This public document, a true and correct copy of which is attached hereto as Exhibit 18, evidences that in April 1973, CUE (which previously had changed its name from Landau-Unger) changed its name again, to Iota Entertainment, Inc. ("Iota").

33.   The former files of Republic also contain a separate agreement between Iota and NTA dated November 12, 1973, by which Iota granted NTA the exclusive and perpetual United States and Canadian videotape/disc cassette rights (i.e., home video rights) in the Picture, as well (the "NTA Home Video Rights Agreement").  A true and correct copy of the NTA Home Video Rights Agreement is attached hereto as Exhibit 19.

34.   The former files of Republic also contain a number of subsequent agreements that reflect the following:

a.   That in 1982, Iota Industries, Inc. – the sole stockholder of Iota – filed for bankruptcy and was administered by a Bankruptcy Trustee;

b.   That through Iota Industry's Bankruptcy Trustee and with the Bankruptcy Court's approval, all of Iota's stock was sold to Redwood Investors Syndicate ("RIS");

c.   That in order to fund its acquisition of Iota's stock, RIS obtained a secured loan from NTA, and RIS pledged the stock and assets of Iota as collateral for the loan;

d.   That RIS eventually defaulted on its loan from NTA, and RIS unconditionally and irrevocably transferred to NTA all of its right, title and interest in the stock and assets of Iota.

DECLARATION OF RICHARD REDLICH, JR.

35.   The documents that evidence the foregoing facts are (i) a Stock Purchase Agreement dated April 14, 1982 between RIS and Iota's Trustee-In-Bankruptcy, a true and correct copy of which is attached hereto as Exhibit 20, (ii) a Loan and Security Agreement dated April 14, 1982 between RIS and NTA, a true and correct copy of which is attached hereto as Exhibit 21, and (iii) a Transfer and Release dated July 30, 1984, between RIS and NTA, a true and correct copy of which is attached hereto as Exhibit 22.

**NTA Becomes Republic Pictures Corporation**

36.   Based upon my information and belief, since at least 1972, NTA had owned the film library of Republic Pictures Corporation.  (I have reviewed a 1972 Annual Report of NTA which makes reference to its acquisition and ownership of the Republic Pictures library).  I further understand, based upon a public document that I obtained from the Delaware Secretary of State (a true and correct copy of which is attached hereto as Exhibit 23) that in January 1985, NTA formally merged with Republic Pictures Corporation and retained the Republic name.

**Republic's Copyright and Renewal Registrations**

37.   In 1989, Republic Pictures Corporation obtained an original United States copyright registration for the English language subtitled version of the Picture. A copy of this registration exists in Paramount's files; it is also available from the Copyright Office.  A true and correct copy of this registration is attached hereto as Exhibit 24.

38.   Also in 1989, Republic Pictures Corporation obtained a renewal United States copyright registration for the English language subtitled version of the Picture. A copy of this registration exists in Paramount's files; it is also available from the Copyright Office.  A true and correct copy of this registration is attached hereto as Exhibit 25.

39.   In 1991, Republic Pictures Corporation obtained an original United States copyright registration for the English language dubbed version of the Picture.

**DECLARATION OF RICHARD REDLICH, JR.**

1   A copy of this registration exists in Paramount's files; it is also available from the

2   Copyright Office.  A true and correct copy of this registration is attached hereto as

3   Exhibit 26.

4        40.   In 1994, Republic obtained a renewal United States copyright registration

5   for the English language dubbed version of the Picture.  A copy of this registration

6   exists in Paramount's files; it is also available from the Copyright Office.  A true and

7   correct copy of this registration is attached hereto as Exhibit 27.

8        41.   In 1994, Republic Pictures Corporation changed its name to Republic

9   Entertainment Inc.  A true and correct copy of Republic's Amended and Restated

10  Certificate of Incorporation reflecting this name change is attached hereto as Exhibit

11  28.

12       42.   In 1996, Republic Entertainment Inc. recorded in the United States

13  Copyright Office a "Notice of Intent to Enforce a Copyright Restored Under the

14  Uruguay Round Agreements Act" respecting the original, Italian language version of

15  the Picture.  A true and correct copy of this Notice and documents evidencing its

16  recordation in the Copyright Office are attached hereto as Exhibit 29.

17       43.   In 1998, Republic Entertainment Inc. filed with the United States

18  Copyright Office a Form GATT, evidencing its restoration of the United States

19  copyright in the original, Italian language version of the Picture.  A true and correct

20  copy of this document is attached hereto as Exhibit 30.

21       44.   In 2005, Republic Entertainment Inc. converted from a corporation to a

22  limited liability company, and became   Republic Entertainment LLC.  A true and

23  correct copy of Republic's "Certificate of Conversion" is attached hereto as Exhibit

24  31.

25

26

27

28

**DECLARATION OF RICHARD REDLICH, JR.**

1 **From Republic to Plaintiffs**

2      45.     Pursuant to a Short Form Assignment executed December 21, 2005,

3 Republic Entertainment LLC assigned its rights in the Picture to Melange. A true and

4 correct copy of this Short Form Assignment is attached hereto as Exhibit 32.

5      46.     Pursuant to a Short Form Memorandum of Distribution Rights executed

6 on December 21, 2005, Melange licensed to Paramount the rights to distribute and

7 otherwise exploit the Picture in the United States and Canada. A true and correct copy

8 of this Short Form Memorandum is attached hereto as Exhibit 33.

9

10      I declare under penalty of perjury that the foregoing is true and correct and that

11 this Declaration was executed at Los Angeles, California on April 3rd, 2013.

13

14                                RICHARD REDLICH, JR.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

13

**DECLARATION OF RICHARD REDLICH, JR.**