DAVID MANNING CHODOS, State Bar # 39555
CHODOS & ASSOCIATES
1880 Century Park East, Suite 1450
Los Angeles, California, 90067
(310) 203-3888 - Telephone
(310) 203-3866 - Facsimile

Attorneys for Defendant INTERNATIONAL
MEDIA FILMS, INC.

| | |
|---|---|
| PARAMOUNT PICTURES CORPORATION, a Delaware corporation; and MELANGE PICTURES LLC, a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> INTERNATIONAL MEDIA FILMS, INC., a Nevada corporation, <br><br> Defendant | CASE NO.:CV 11-09112-SJO AJWx) <br><br> Hon. James Otero <br><br> DECLARATION OF ALFREDO LEONE IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT <br><br> Date:  June 3, 2013 <br> Time:  10:00 a.m. <br> Place:  Courtroom No. 1 |

I, Alfredo Leone, declare as follows:

1.    I am currently the authorized agent of plaintiff International Media Films, Inc. ("IMF" or "Defendant") a Nevada corporation with its principal place of business at 310 East 44th, Street, Suite 1024, New York, New York 10022. IMF is a film Library and film production company that specializes in the distribution of classic films.

2.    I am the President of IMF. See, the "Resolution of the Board of Directors" of IMF attached hereto as Exhibit A.  In that capacity I kept, as IMF records, the chain of title documents described below.

3.    On March 9, 1962, Riama Film S.p.A. ("Riama"), the principal

1

DECLARATION OF ALFREDO LEONE<br>IN SUPPORT OF IMF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

production company for La Dolce Vita, transferred all of its rights in and to La Dolce Vita for a territory comprising the entire world excluding Italy, Belgium, Luxembourg and France (and former colonies) (the "Territory") to Cinemat S.A. ("Cinemat"). This Riama / Cinemat Agreement, along with an English translation of same, is attached hereto as Exhibit B.

4.    On December 9, 1980, Cinemat transferred all the rights it had received from Riama in La Dolce Vita, by way of a written transfer agreement, to Hor A.G. ("HOR"). This Cinemat / Hor Agreement, along with an English translation of same, is attached hereto as Exhibit C.

5.    The transfer of La Dolce Vita from Cinemat to Hor noted in the immediately preceding paragraph was verified by a Declaration dated December 29, 1980 in which Bruno A. Hugi, administrator of Cinemat, declared the validity of the December 9, 1980 transfer. A copy of this declaration, along with an English translation of same, is attached hereto as Exhibit D.

6.    On November 20, 1981, Hor transferred all the rights it had received from Cinemat in La Dolce Vita to Oriental Films S.r.L. ("Oriental Films") via a written transfer agreement. This Hor/Oriental transfer agreement, along with an English translation of same, is attached hereto as Exhibit E.

7.    The transfer of La Dolce Vita from Hor to Oriental Films on November 20, 1981, noted in the immediately preceding paragraph, was verified by an official stamped Declaration executed by Hor on March 15, 1982. A copy of this Declaration, along with an English translation of same, is attached hereto as Exhibit F.

8.    On October 23, 1997, Oriental Films and Cinestampa Internazionale S.r.l. ("Cinestampa") entered into a letter agreement by which Oriental Films granted Cinestampa the right to lease and sell La Dolce Vita. A copy of this letter, along with an English translation of same, is attached hereto as Exhibit G.

9.    On January 7, 1998, Oriental Films transferred all of its aforesaid rights in "La Dolce Vita" to Cinestampa. This Oriental Films / Cinestampa transfer agreement, along with an English translation of same, is attached hereto as Exhibit H.

10.    The transfer of La Dolce Vita from Oriental Films to Cinestampa was verified by a notarized Declaration dated April 10, 1998 by which Oriental Films declared that it transferred to Cinestampa all rights, including "all rights in subject and script" in La Dolce Vita to Cinestampa. A copy of this declaration, along with an English translation of same, is attached hereto as Exhibit I.

11.    On September 20, 2001, Cinestampa transferred all of its aforesaid rights in "La Dolce Vita" to IMF via a written transfer agreement. A copy of this Cinestampa/IMF transfer agreement, along with an English translation of same, is attached hereto as Exhibit J.

12.    On September 7, 2005, the September 20, 2001 transfer of "all rights (none excluded)" in La Dolce Vita, including such "rights in the subject and script of the film "La Dolce Vita" from Cinestampa to IMF was verified by a notarized Declaration. A copy of this declaration (erroneously entitled "Transfer Instrument") along with an English translation of same, is attached hereto as Exhibit K.

13.    In 2005, Nicola Rocchetti, Esq. an Italian attorney for Cinestampa, examined all documents related to La Dolce Vita that had been filed with the Societa Italiana degli Autori ed Editori (the Italian Society of Authors and Publishers, or "SIAE"), as well as documents pertaining to La Dolce Vita which Cinestampa had in its possession. Mr. Rocchetti drafted a legal analysis of such documents. A copy of Mr. Roccheti's legal opinion, along with an English translation of same, is attached hereto as Exhibit L.

14.    On February 2, 2010 IMF assigned its rights to La Dolce Vita to

3

International Classic Films, LLC ("ICF") along with several other classic films. A copy of the assignment document is attached hereto as Exhibit M. Since 2010, ICF has been the rightful owner of all intellectual property rights in and to La Dolce Vita in the Territory.

15.    IMF holds a Certificate of Recordation from the United States Copyright Office dated October 29, 2001 which certifies that Cinestampa transferred La Dolce Vita to IMF. A copy of IMF's Certificate of Recordation issued by the United States Copyright Office is attached hereto as Exhibit N.

16.    IMF holds a certificate of copyright registration for La Dolce Vita and has not relinquished any ownership rights in the Motion Picture other than its assignment of rights to ICF described in Paragraph 14 above.

17.    On August 22, 2011, ICF recorded its assignment of La Dolce Vita with the U.S. Copyright Office (Document No.: V3607D546). A copy of ICF's registration is attached hereto as Exhibit O.

18.    I am unaware of the activities of any of my predecessors in interest in connection with exploitation of the Picture prior to my purchase of its rights in September 2001. I was asked this question by Plaintiffs' counsel David Halberstadter, Esq. at deposition and had never inquired about such activities. IMF is an American company and its primary focus of interest was to exploit the Picture rights here in the United States, where these Italian companies, to the best of my knowledge  had never operated here.

19    When IMF purchased Cinestampa's rights to the Motion Picture, we were provided with the chain of title documents described above.  They included documents with original signatures, the disposition of which is set forth in Franco Marconi's declaration to be filed with mine.

20.    On March 28, 2013 I participated in a telephone conversation between my attorney and Mushi Glam, the sole director of Cineatampa who executed

4

Exhibits J and K above. Because I speak decent Italian, I served as an informal translator for them. During the course of the conversation when Mr. Chodos asked a question about how Cinestampa ended up with the rights to La Dolce Vita, Mr. Glam said something about the acquisition from Cinemat. When questioned as to what he knew about it, Mr. Glam explained his relationship and that of this father with Hor, Oriental and Cinestampa and the transfers in which they participated. That revelation led to our seeking his declaration, which is being filed with my own. It describes, among other things, his contemporaneous knowledge of the Cinemat –Hor transaction and how Exhibits E and F were received by Hor.

21. During the course of this litigation in May 2012, I sought the assistance and Cinestampa to determine whether Mr. Hugi was still alive. Exhibit I received back a certification as to his death. Exhibit P is a copy of that certification

22. Becoming aware of Paramount's attempts to exploit the film, I had my attorneys write cease and desist letters over the years. In the course of exchanges my attorneys were presented, and relayed to me, a version of the supposed Cinemat Astor "Agreement" looks identical to the copy listed as Exhibit 2 to Mr. Redlich's declaration. My lawyers asked Paramount to provide us with the complete chain of title supporting Paramount's claims, but Paramount's lawyer refused. The copy of the agreement we were sent looked nothing like a real agreement.

a. It had a New York Supreme Court exhibit stamp dated September 19, 1983 indicating that litigation occurred over the agreement that Paramount has not to this day explained.

b. The document looked like a confabulation of pages from different documents. The intensity of the type fonts differed from page to page and even within a page.

5

c.    It had two first pages with different writing on them.

d.    The signatures were not notarized, and were barely legible.

23.    In short the "Agreement'" was in a condition like nothing I had ever seen before and I see a lot of transfer agreements in my business.  Transfer documents like these are important documents in the film distribution business and we are careful to keep good records of them.  Frankly, this one looked phony.

24.    My attorney, Peter Fields, sent me a copy of a letter he sent to David Halberstadter, pointing out the deficiencies in the agreement and asking to see whatever documents it had regarding the supposed transaction and the rest of the chain-of-title documents it had.  A copy of his letter is attached hereto as Exhibit Q.  Despite his request (See page 2 of his letter) , we never received any of the other title documents or evidence as to the validity of Paramount's claim until late in this action and after substantial delays, we received the chain of title information now before this court in discovery.   When Paramount refused to provide information that I would have expected anyone with a serious claim to make to provide voluntarily I assumed that they had dropped the issue until, three years later they filed suit.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on April 2‌‌, 2013 at New York, New York.

By: _____
Mr. Alfredo Leone

6